UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------x
Bascom Global Internet Services, Inc.,

|  |  |
|---|---|
| Plaintiff, | Case No. 2:08-cv-1765 (LDW)(ARL) |
| -against- | **JURY TRIAL DEMANDED** |

AOL Inc., et al.,

Defendants.
--------------------------------------------------------x

## JOINT PROPOSED JURY INSTRUCTIONS

Plaintiff Bascom Global Internet Services, Inc. ("Bascom") and Defendant AOL Inc. ("AOL") submit herewith their joint proposed jury instructions.

The parties agree to instructions 1.1, 1.2, 1.3, 2.1, 2.2, 2.4, 3.3, 4.2, 4.5, and 4.6.  The parties substantively dispute instructions 3.1, 3.4, 3.5, 4.1, 4.3, 4.4, 5.0, and 5.2.  Where an instruction is disputed, the parties have identified the dispute in brackets and stated their respective position in an accompanying footnote.  The parties will be prepared to address their respective positions at the charge conference.

The parties also have a global dispute over the nomenclature for the asserted patent in these instructions.  This dispute focuses on whether the asserted patent in this case should be identified as "the Bascom patent," as proposed by Plaintiff Bascom, or as "the '606 patent," as proposed by Defendant AOL.  This term is set off in brackets including the parties' respective proposals for edit upon the Court's decision on this issue (i.e., "[the Bascom patent  /  the '606 patent]").

## TABLE OF CONTENTS

1. GENERAL INSTRUCTIONS...................................................................................1

   1.1. INTRODUCTION [**UNDISPUTED**] .........................................................1

   1.2. BURDEN OF PROOF [**UNDISPUTED**] ..................................................2

   1.3. THE EVIDENCE TO BE CONSIDERED [**UNDISPUTED**] ....................3

2. CLAIM CONSTRUCTION .......................................................................................5

   2.1. THE ROLE OF THE CLAIMS OF A PATENT [**UNDISPUTED**] .............5

   2.2. HOW A CLAIM DEFINES WHAT IT COVERS [**UNDISPUTED**]...........6

   2.3. INDEPENDENT AND DEPENDENT CLAIMS [**UNDISPUTED EXCEPT FOR NOMENCLATURE**]........................................................................................7

   2.4. CLAIM INTERPRETATION [**UNDISPUTED**] .......................................8

3. INFRINGEMENT ...................................................................................................11

   3.1. INFRINGEMENT GENERALLY [**DISPUTED**].....................................11

   3.2. DIRECT INFRINGEMENT BY LITERAL INFRINGEMENT [**UNDISPUTED EXCEPT FOR NOMENCLATURE**] ....................................................................13

   3.3. DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS [**UNDISPUTED**]........................................................................................14

   3.4. INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT [**DISPUTED**] .............15

   3.5. INDIRECT INFRINGEMENT—CONTRIBUTORY INDUCEMENT [**DISPUTED**] ....................................................................................................17

   3.6. WILLFUL INFRINGEMENT [**UNDISPUTED EXCEPT FOR NOMENCLATURE**]........................................................................................18

4. VALIDITY ..............................................................................................................20

   4.1. INVALIDITY—BURDEN OF PROOF [**DISPUTED**] ...........................20

   4.2. VALIDITY—PRIOR ART [**UNDISPUTED**]...........................................21

   4.3. VALIDITY—ANTICIPATION [**DISPUTED**] ........................................22

   4.4. VALIDITY—OBVIOUSNESS [**DISPUTED**].........................................24

4.5.   VALIDITY—LEVEL OF ORDINARY SKILL **[UNDISPUTED]** ........................... 27

4.6.   VALIDITY—DATE OF INVENTION **[UNDISPUTED]** ....................................... 28

5.   DAMAGES—INTRODUCTION **[DISPUTED]** .......................................................... 29

5.1.   REASONABLE ROYALTY  **[UNDISPUTED EXCEPT FOR NOMENCLATURE]** ................................................................................................................ 31

5.2.   DATE OF COMMENCEMENT OF DAMAGES **[DISPUTED]** ............................. 34

1.      GENERAL INSTRUCTIONS

1.1.    INTRODUCTION  [**UNDISPUTED]**

It is your responsibility and duty to find from all the evidence in the case. You are the judges of the facts, not counsel and not myself.

I want to impress upon you again the importance of that role. It is for you and you alone to pass upon the weight of the evidence and to resolve such conflict that may have appeared in the evidence and to draw such inferences as you deem to be reasonable and warranted from the evidence or the lack of evidence.

With respect to any question concerning the facts, it is your recollection of the evidence and yours alone that controls.

The parties are equal before this Court.

This case should be considered and decided by you as an action between parties of equal standing in the community. All persons, corporations, institutions are equal before the law and should be dealt with as equals in this court.

No party is entitled to sympathy or favor. You must judge the facts and apply the law as I shall instruct you without bias, prejudice or sympathy, either for the plaintiff or the defendant.

1.2.     BURDEN OF PROOF [**UNDISPUTED**]

In a civil case such as this, the plaintiff has the burden of proving the essential elements of its claim against the defendant by a preponderance of the evidence.

To establish a claim by a preponderance of the evidence means simply to prove that something is more likely. A preponderance of the evidence means the greater part of the evidence. It does not mean the greater number of witnesses or the greater length of time taken by either side. The phrase preponderance refers to the quality of the evidence, the weight and effect it has on your minds.

If the plaintiff is to win, the evidence that supports its claim must appeal to you as more nearly representing what took place than the evidence opposed to its claim. To put it differently, if you put plaintiff's and defendants' evidence on opposite sides of the scales, plaintiff would have to make the scales tip somewhat on its side.

If the evidence weighs so evenly that you are unable to say that there is a preponderance on either side, then you must resolve it in the defendants' favor.

To recapitulate, a preponderance of the evidence means such evidence as when considered and compared with that opposed to it produces in your mind a belief that what is sought to be proved is more likely the case than not the case.

You heard lawyers talk about who has the burden and what type of burden.

In the charge we will tell you who has the particular burden and what type of particular know who has the burden and what type of burden they have. Again, that will be in the charge, in the middle portion of the law portion. When we explain the law, we will also tell you who has the burden and what type.

2

### 1.3.    THE EVIDENCE TO BE CONSIDERED  [**UNDISPUTED**]

The evidence upon which you are to decide the facts come in several forms:

- Sworn testimony of witnesses, both on direct and cross-examination and regardless of who called them;

- Exhibits that the Court has received in evidence. Only that which was marked in evidence comes in; and

- Facts which the lawyers have agreed to or stipulated.

Certain things are not evidence and are not to be decided in deciding what the facts are.

Again, arguments or statements by lawyers are not evidence. Objections to questions are not evidence. Testimony that has been excluded is not evidence. Of course, anything you may have seen or heard outside the courtroom is not evidence.

In deciding what the facts are, you must consider all the evidence that has been offered. In doing this, you must decide which testimony to believe and which testimony not to believe. In making that decision, there are a number of factors you may take into account, including the following:

The witness' opportunity to observe what he or she described; the witness' intelligence and memory; the witness' manner while testifying. Does the witness have an interest in the outcome of the case? Does the witness have any bias or prejudice concerning any of the matters involved in this case? The reasonableness of the witness' testimony considered in the light of all the evidence in the case.

In considering the testimony of the plaintiff or the defendants, you must apply the same standards you apply to any other witness.

If you find that a witness' testimony is contradicted by what that witness has said or done

3

at another time, or by the testimony of other witnesses, you may disbelieve all or any part of the witness' testimony. But in deciding whether or not to believe the witness, keep this in mind:

People sometimes forget things. A contradiction may be an innocent lapse of memory or it may be an intentional falsehood. Consider, therefore, whether it has to do with an important fact or only a small detail.

Different people observing the same event remember it differently and, therefore, testify about it differently.

You may consider these factors in deciding how much weight to give to the testimony. You are not to give any greater weight or credence to a witness solely because of his title or position.

Ordinarily, opinions of witnesses are not received in evidence. However, opinions of expert witnesses qualified by training and experience in a particular field of specialized learning are received in evidence and the expert witness is permitted and expected to give you the reasons for and the basis of his or her opinion. You should weigh and evaluate the testimony of an expert witness precisely as you weigh the testimony of any other witness. The relationship between a party and the expert witness is a factor you may consider in judging the credibility and weight to be given to the testimony of that witness. Such a relationship, however, does not mean that the witness was untruthful.

2.      CLAIM CONSTRUCTION

2.1.    THE ROLE OF THE CLAIMS OF A PATENT [**UNDISPUTED**]

Before you can decide many of the issues in this case, you will need to understand the role of patent claims.

The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

## 2.2.    HOW A CLAIM DEFINES WHAT IT COVERS [**UNDISPUTED**]

I will now explain how a claim defines what it covers.

A claim sets forth in words a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim.

In patent law, the requirements of a claim are often referred to as claim elements or claim limitations. When a thing such as a product or a process meets all of the requirements of a claim, the claim is said to cover that thing, and that thing is said to fall within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process. Sometimes the words in a patent claim are difficult to understand, and, therefore, it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provided to you.

By understanding the meaning of the words in a claim, and by understanding that the words in a claim set forth the requirements that a product or system must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

6

2.3.    INDEPENDENT AND DEPENDENT CLAIMS [**UNDISPUTED EXCEPT FOR NOMENCLATURE**]

This case involves two types of patent claims, independent claims and dependent claims.

An independent claim sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, claims one and 14 of **[the Bascom patent  /  the '606 patent]**, which have not been asserted by Bascom, are independent claims.  Claim 22 of **[the Bascom patent  /  the '606 patent]**, which is being asserted, is another independent claim.

Other claims, specifically claims 10-12, 15-16, and 23 of **[the Bascom patent  /  the '606 patent]**, which are being asserted, are dependent claims. A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim depends on another claim.

A dependent claim incorporates all of the requirements of the claim or claims to which it refers.  The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim or claims to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim or claims to which it refers is covered by that dependent claim.

2.4.    CLAIM INTERPRETATION[1]  **[UNDISPUTED]**

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims. As I have previously instructed you, you must accept my definition of these words in the claims as correct.

I will read you a claim term and then the corresponding construction.

- "local client computer":  "an Individual Controlled Access Network Account ("ICANA") end-user computer that requests access to the Internet, and retrieval of Internet content, via communication with an ISP server as viewed from the perspective of said ICANA end-user computer."

- "remote client computer":  "an Individual Controlled Access Network Account ("ICANA") end-user computer that requests access to the Internet, and retrieval of Internet content, via communication with an ISP server as viewed from the perspective of said ISP server."

- "ISP server":  "an Internet Service Provider's ("ISP") computer or computer configuration that performs the functions associated with providing an Internet interface portal, for access to and interactivity with Internet content, based upon Internet content filtering for an ICANA end-user computer."

- "Remote ISP server":  "an Internet Service Provider's ("ISP") computer or computer configuration that performs the functions associated with providing an Internet interface portal, for access to and interactivity with Internet content, based upon Internet content filtering for an ICANA end-user computer, viewed

_____

[1] Both parties maintain their respective objections to the Special Master's Report and Recommendations, as previously set forth in their prior submissions.

from the perspective of said ICANA end-user computer."

- "Logical filtering elements":  "The filtering information contained in a database where the type of said filtering information contained in said database is dependent upon the type of information required by the logic-based decision-making function of a filtering scheme."

- "Filtering scheme":  "Computer program, software, or code that incorporates logic-based decision-making techniques to determine whether to allow Internet access where said computer program, software, or code consists of any of various types of executable code, interpreted code, script languages or other high level programs."

- "Hybrid exclusive-list inclusive-list scheme":  "A filtering scheme that includes at least one exclusive list ("E-Type") and at least one inclusive list ("I-Type") for checking to determine whether to allow Internet access, where at least one of said E-Type list or at least one of said I-Type list is checked, and the logic-based decision making techniques of said filtering scheme dictate whether more than one of the same Type of said list that was checked will be checked, and whether one or more of the Type of said list that is different from the Type of said list that was checked will be checked."

- "Internet sites" / "sites":  "An Internet computer network addressable location that contains a collection of content."[2]

- "Personal site list":  "An ICANA designated list of Internet computer network addressable locations that contain a collection of content where said list includes

---

[2] Special Master's Report and Recommendation of the Special Master Concerning Claim Construction (Dkt. 100) in 2:08-cv-1765-LDW-ARL at p. 116 and Appendix B.

9

zero or more said Internet computer network addressable locations that contain a collection of content."

For any words in the asserted claims for which I have not provided you with a definition, you should apply their common meaning. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

3.      INFRINGEMENT

3.1.    INFRINGEMENT GENERALLY **[DISPUTED]**

I will now instruct you how to decide whether or not AOL has infringed **[the Bascom patent  /  the '606 patent]**. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim and no infringement as to another.

In this case there are three possible ways that a claim may be infringed. The three types of infringement are called: One, direct infringement; two, active inducement; and, three, contributory infringement.

Active inducement [and contributory infringement are][3] is referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement.  [To prove indirect infringement against AOL, Bascom must also prove that AOL's indirect infringement caused direct infringement.][4]  In this case, Bascom has alleged that AOL directly infringes **[the Bascom patent  /  the '606 patent]** in the United States. In addition, Bascom has alleged that certain users of AOL's services in the United States directly infringe **[the Bascom patent  /  the '606 patent]**, and AOL is liable for actively inducing [or contributing

---

[3] AOL objects to incorporating contributory infringement in the jury instructions.  There is no contention or evidence in the record from which the jury could conclude that AOL contributed to any  infringement by others.  Nor is there any contention or evidence of record suggesting that AOL's system has no substantial noninfringing use, or is a nonstaple article of commerce.  Nor is there any evidence or contentions that establish the other elements of 35 U.S.C. § 271(c).  On the other hand, Bascom contends that AOL has contributorily infringed, and that there is ample evidence from which the jury could find contributory infringement.  The evidence establishes that when the accused Parental Controls with WebUnlock is used, there is infringement --i.e., there is no substantial noninfringing use in accordance with *Lucent v. Gateway*, 580 F.3d 1301 (Fed. Cir. 2009).

[4] Bascom believes that this sentence is duplicative of preceding sentence and Section 3.4, and should not be included.  This sentence was not included in *Plasma Physics* instruction.  AOL, on the other hand, notes that this sentence is included in the Federal Circuit Bar Association's model instruction, and should be included for clarity.

to][5] that direct infringement by certain users of AOL's services. Bascom has also alleged that AOL is liable for contributory infringement.

In order to prove infringement, Bascom must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

---

[5] *See* fn. 3.

### 3.2. DIRECT INFRINGEMENT BY LITERAL INFRINGEMENT [UNDISPUTED EXCEPT FOR NOMENCLATURE]

There are two types of direct infringement:  One, literal infringement; and two, infringement under the doctrine of equivalents.

In order to prove direct infringement by literal infringement, Bascom must prove by a preponderance of the evidence, that is, that it is more likely than not, that AOL made, used, sold, offered for sale within or imported into the United States a product or system that meets all the requirements of a claim and did so without the permission of Bascom since the issuance of **[the Bascom patent  /  the '606 patent]**. You must compare Parental Controls with WebUnlock with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine separately for each asserted claim whether or not there is infringement.

There is one exception to this rule. If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.

On the other hand, if you find that an independent claim has been infringed, you must still decide separately whether the product or system meets additional requirements of any claims that depend from the independent claim, thus, whether those claims have also been infringed. A dependent claim includes all of the requirements of any of the claims to which it refers plus additional requirements of its own.

### 3.3. DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS [**UNDISPUTED**]

If a company makes, uses, sells, offering to sell within or imports into the United States a product or system that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product or system satisfies that claim under the doctrine of equivalents.

Under the doctrine of equivalents, a product or system infringes a claim if the accused product or system contains elements corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused product or system.

You may find that an element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be insubstantial, or would have found that the structure (1) performs substantially the same function, (2) works in substantially the same way, (3) to achieve substantially the same result as the requirement of the claim.

The known interchangeability of the element with the corresponding claim limitation is an indicator that the element is an equivalent to the claim limitation.  In order for the structure or action to be considered interchangeable, the structure or action must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent.

In order to prove infringement by equivalents, Bascom must prove the equivalency of the structure to a claim element by a preponderance of the evidence.

14

3.4.    INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT[6]
        [DISPUTED]

Bascom alleges that AOL is liable for infringement by actively inducing certain users of AOL's services in the United States to directly infringe **[the Bascom patent / the '606 patent]** literally or under the doctrine of equivalents.

As with direct infringement, you must decide whether there has been active inducement on a claim by claim basis.

AOL is liable for active inducement of a claim only if Bascom proves by a preponderance of the evidence that:

(1) AOL took action during the time that **[the Bascom patent / the '606 patent]** was in force intending to cause acts by certain users of AOL's services in the United States;

(2) AOL was aware of **[the Bascom patent / the '606 patent]** or was willfully blind to the existence of the patent, and knew or should have known that the acts, if taken in the United States, would constitute infringement of that patent; and

(3) the acts are actually carried out by the certain users of AOL's services in the United States and directly infringed a claim.

[When considering whether AOL knew of should have known that the induced actions would constitute infringement, in the totality of the circumstances, you may consider all of the

_____

[6] Final jury instruction from *Plasma Physics Corp. et al. v. Chi Mei Optoelectronics Corp. et al.,* 2:08-cv-01628-LDW-WDW, *see* 12/9/2010 Trial Tr. at 883-884.  The instruction was modified to change the "deliberately disregarded a known risk" language to the willful blindness set forth in *Global-Tech Appliances, Inc., v. SEB S.A.*, 131 S. Ct. 2060 (2011).  Instruction further modified to include the instruction given in *Broadcom* regarding advice of counsel.  *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) ("Because opinion-of-counsel evidence, along with other factors, may reflect whether the accused infringer "knew or should have known" that its actions would cause another to directly infringe, we hold that such evidence remains relevant to the second prong of the intent analysis. Moreover, we disagree with Qualcomm's argument and further hold that the failure to procure such an opinion may be probative of intent in this context.").

circumstances, including whether or not AOL obtained the advice of a competent lawyer.][7]

In order to establish active inducement of infringement, it is not sufficient that the certain users of AOL's services in the United States themselves directly infringed the claim. Nor is it sufficient that AOL was aware of the act or acts by the certain users of AOL's services in the United States that allegedly constitute direct infringement.

Rather, you must find that AOL specifically intended certain users of AOL's services in the United States to infringe **[the Bascom patent  /  the '606 patent]** in order to find inducement of infringement.

[In this regard, you must find that AOL had actual knowledge or was willfully blind to the fact that conduct of certain users of AOL's services constituted infringement and thus specifically intended certain users of AOL's services to infringe **[the Bascom patent  /  the '606 patent]**, in order to find inducement of infringement.  To find that AOL was willfully blind, you must find that (1) AOL subjectively believed that there was a high probability that conduct of certain users of AOL's services constituted infringement of **[the Bascom patent  /  the '606 patent]**, and (2) AOL took deliberate actions to avoid learning that fact.  AOL's deliberate indifference to a known risk that conduct of certain users of AOL's services constituted infringement of **[the Bascom patent  /  the '606 patent]** does not satisfy the knowledge requirement for inducement of infringement.][8]

---

[7] AOL contends that this paragraph should not be included in this instruction because it is irrelevant to the issues in this case and unnecessary.  Bascom contends that under *Broadcom*, the failure to procure an opinion of counsel may be probative of intent to induce infringement, and that this paragraph should be included.

[8] Bascom believes that this paragraph should not be included because it overemphasizes the legal requirements for inducing infringement.  AOL contends that this paragraph should be included and notes that the *Global Tech* decision issued after *Plasma Physics* and believes that the law should be explicitly stated.

3.5.    INDIRECT INFRINGEMENT—CONTRIBUTORY INDUCEMENT[2] [DISPUTED]

Bascom argues that AOL is liable for contributory infringement by contributing to the direct infringement of **[the Bascom patent  /  the '606 patent]** by users of the AOL Parental Controls with WebUnlock. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

AOL is liable for contributory infringement of a claim if Bascom proves by a preponderance of the evidence:

(1) AOL sells, offers to sell, or imports within the United States a component of a product during the time **[the Bascom patent  /  the '606 patent]** is in force;

(2) the component has no substantial, noninfringing use;

(3) the component constitutes a material part of the invention;

(4) AOL is aware of **[the Bascom patent  /  the '606 patent]** and knows that the system for which the AOL Parental Controls with WebUnlock has no other substantial use may be covered by a claim of **[the Bascom patent  /  the '606 patent]** or may satisfy a claim of **[the Bascom patent  /  the '606 patent]** under the doctrine of equivalents; and

(5) that use directly infringes the claim.

In order to prove contributory infringement, Bascom must prove that each of the above requirements is met. This proof of each requirement must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements is met.

---

[2] AOL and Bascom disagree as to whether this instruction should be issued.  *See* fn. 3.

3.6.   WILLFUL INFRINGEMENT **[UNDISPUTED EXCEPT FOR NOMENCLATURE]**

In this case, Bascom argues both that AOL infringed and, further, that AOL infringed willfully.

If you decide that AOL has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine by clear and convincing evidence that AOL acted recklessly.

To prove that AOL acted recklessly, Bascom must prove two things by clear and convincing evidence. The first part of the test is objective. Bascom must persuade you that AOL acted despite a high likelihood that AOL's actions infringed a valid and enforceable patent.

In making this determination, you may not consider AOL's state of mind. Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness. Only if you conclude that AOL's conduct was reckless do you need to consider the second part of the test. The second part of the test does depend on the state of mind of AOL. Bascom must persuade you that AOL actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. To determine whether AOL had this state of mind, consider all facts which may include but are not limited to:

(1)   Whether or not AOL acted in accordance with the standards of commerce for its industry.

(2)   Whether or not AOL intentionally copied a product of Bascom's that is covered by **[the Bascom patent  /  the '606 patent]**.

(3)   Whether or not there is a reasonable basis to believe that AOL did not infringe or had a reasonable defense to infringement.

18

(4)     Whether or not AOL made a good-faith effort to avoid infringing **[the Bascom patent / the '606 patent]**, for example, whether AOL attempted to design around **[the Bascom patent / the '606 patent]**.

(5)     Whether or not AOL tried to cover up its infringement.

4.      VALIDITY

4.1.    INVALIDITY—BURDEN OF PROOF  **[DISPUTED]**

I will now instruct you on the rules you must follow in deciding whether or not AOL has

proven that the asserted claims of **[the Bascom patent  /  the '606 patent]** are invalid. Invalidity

is assessed on a claim-by-claim basis.

To prove any claim of a patent-in-suit is invalid, AOL must persuade you by clear and

convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

[You may consider that you have heard evidence that the Patent Office had no

opportunity to evaluate before granting **[the Bascom patent  /  the '606 patent]**.][10]

[You may evaluate whether the evidence presented in this case is materially new as

compared to the evidence presented to the Patent Office and, if so, you may take that into

consideration when determining whether an invalidity defense has been proved by clear and

convincing evidence.][11]

---

[10] Bascom objects to this paragraph as a confusing excerpt from the Supreme Court's *i4i*'s decision.  It is unsuitable for a jury instruction because it provides no guidance to the jury as to what it is supposed to do with the referenced information.  AOL submits that this paragraph is taken nearly verbatim from the Supreme Court's decision in *i4i*, and should be issued along with Bascom's proposal in order to provide a complete and accurate recitation of the law as stated in *i4i*.

[11] AOL contends that this paragraph should only be issued along with AOL's proposal to provide a complete and accurate recitation of the law as stated in *i4i*.  In isolation, Bascom's proposal stands as a confusing excerpt from the Supreme Court's *i4i* decision.  On the other hand, Bascom believes that this paragraph provides a more helpful and accurate recitation of the law, and should be included in the instruction without AOL's proposal.  *See Microsoft Corp. v. i4i Limited Partnership,* 131 S.Ct. 2238, 2251 (2011).

### 4.2.   VALIDITY—PRIOR ART **[UNDISPUTED]**

Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented either before the Bascom's inventions were made or more than one year before the filing date of the patent application, which is March 19, 1997.

4.3.    VALIDITY—ANTICIPATION  **[DISPUTED]**[12]

In order for someone to be entitled to a patent, the invention must actually be new. In general, inventions are new when the identical product or process has not been made, used or disclosed before. Anticipation must be determined on a claim by claim basis.

For a claim to be invalid because it is not new, AOL must show that all of the requirements of that claim were present in a single previous device or method that was known of, used or described in a single previous printed publication or patent. We call these things anticipating prior art.

[If][13] AOL contends that the asserted claims of **[the Bascom patent  /  the '606 patent]** are invalid because the claimed inventions are anticipated. AOL must convince you of this by clear and convincing evidence, that is, that the evidence highly probably demonstrates that the asserted claims are invalid.

To anticipate the invention, the prior art does not have to use the same words as the claim. But all the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one item or reference, that person could make and use the claimed invention.

Here is a list of ways that AOL can show that a patent claim was not new:

(1)    An invention is not new if it is known to or used by others in the United States before the date of invention. An invention is known when the information about it

---

[12] Bascom objects to this instruction in its entirety.  AOL's expert witness only offered an opinion with respect to obviousness, not with respect to anticipation.  There is no evidence from which the jury can find anticipation, and it is confusing to instruct the jury on anticipation.  AOL contends that the evidence in this case demonstrates that the asserted claims of **[the Bascom patent  /  the '606 patent]** are invalid as anticipated.
[13] If any portion of this instruction is provided to the jury, Bascom requests that the instruction be preceded by the word "If."  Bascom's position is that this paragraph is inaccurate because AOL has not contended during this trial that any claims are anticipated.  AOL contends that a conditional jury instruction beginning with the word "if" is not appropriate.

was reasonably accessible to the public on that date.

(2)     An invention is not new if it was already patented or described in a printed

publication anywhere in the world before the date of invention. A description is a

printed publication only if it was publicly accessible.

(3)     Bascom has lost its rights if the claimed invention was already patented or

described in a printed publication somewhere in the world more than a year

before March 19, 1997, which is the earliest effective filing date of the application

for **[the Bascom patent  /  the '606 patent]**. An invention was patented by

another if another patent describes the same invention claimed by Bascom to a

person having ordinary skill in the technology.

4.4.   VALIDITY—OBVIOUSNESS[14] **[DISPUTED]**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

AOL may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the art that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.  [Your determination of obviousness should consider what a person of ordinary skill in the art would have known at the time of the invention including their common sense.][15]

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the art to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the

---

[14] Based on 2010 Federal Circuit Bar Association Model Patent Jury Instructions at 59-61.
[15] Bascom objects to this sentence.  This sentence is not in the model instruction, is confusing, and improperly elevates and emphasizes the alleged role of "common sense."  The model instruction fairly characterizes the law.  AOL contends that this sentence should be included in accordance with the Supreme Court's decision in *KSR Int'l Co., v. Teleflex Inc.*, 550 U.S. 398, 420-21 (2007).

claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

a.      Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b.      Whether the invention satisfied a long-felt need;

c.      Whether others had tried and failed to make the invention;

d.      Whether others invented the invention at roughly the same time;

e.      Whether others copied the invention;

f.      Whether there were changes or related technologies or market needs contemporaneous with the invention;

25

g.      Whether the invention achieved unexpected results;

h.      Whether others in the field praised the invention;

i.      Whether persons having ordinary skill in the art of the invention expressed surprise or

disbelief regarding the invention;

j.      Whether others sought or obtained rights to the patent from the patent holder; and

k.      Whether the inventor proceeded contrary to accepted wisdom in the field.

4.5.    VALIDITY—LEVEL OF ORDINARY SKILL **[UNDISPUTED]**

In deciding the level of ordinary skill in the field of the invention, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

4.6.    VALIDITY—DATE OF INVENTION **[UNDISPUTED]**

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventors were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day. Conception is the mental part of an inventive act, *i.e.*, the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

A claimed invention is "reduced to practice" when it has been constructed/used/tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application. An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application.

5.      DAMAGES—INTRODUCTION **[DISPUTED]**

If you find that AOL have infringed any valid claim of **[the Bascom patent / the '606 patent]**, you must then consider what amount of damages to award Bascom. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case on any issue.

The damages you award must be adequate to compensate Bascom for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Bascom in approximately the same financial position that it would have been in had the infringement not occurred.

Bascom has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Bascom establishes that it more likely than not suffered.

There are different types of damages that Bascom may be entitled to recover. In this case, Bascom seeks a reasonable royalty. A reasonable royalty is defined as the money amount Bascom and AOL would have agreed upon as a fee for use of the invention at the time prior to when infringement began.

[You may consider damages under the "entire market value rule," which allows for the recovery of damages based on the value of an entire product or system containing several features, even though only one feature is patented.  However, the "entire market value rule" is applicable only if the patented feature constitutes the basis for consumer demand of the entire product or system.][16]

---

[16] Bascom objects to an "entire market value" rule instruction.  This instruction is not in the model instructions or the instructions in *Plasma Physics*.  Bascom's requested royalty is not based on the value of the entire product or system.  There is no evidentiary basis for this instruction.  Bascom did not offer evidence that the running royalty was equal to 1.1% of AOL's

I will give more detailed instructions regarding damages shortly. Note, however, that

Bascom is entitled to recover no less than a reasonable royalty for each infringing act.

---

entire subscription price; this information was elicited by AOL's counsel.  In addition, Bascom's requested running royalty was based on only those AOL subscribers that used Parental Controls with WebUnlock, not all subscribers.  Bascom respectfully refers the Court to its opposition to AOL's Daubert Motion for the applicable legal authorities.  AOL contends that an "entire market value" rule instruction is necessary because Bascom has sought a running royalty of $3 per user stated as 1.1% of AOL's entire subscription price, implicating the "entire market value" rule under *Garretson v. Clark,* 111 U.S. 12 (1884) and *Lucent v. Gateway*, 580 F.3d 1301 (Fed. Cir. 2009), as well as additional authorities set forth in AOL's Daubert motion.  Under *Lucent*, Bascom's $3 per user royalty implicates AOL's entire subscription revenues for AOL's subscribers who use Parental Controls.

### 5.1.    REASONABLE ROYALTY  [UNDISPUTED EXCEPT FOR NOMENCLATURE]

If you find that Bascom has established infringement, Bascom is entitled to no less than a reasonable royalty to compensate it for that infringement.

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed in a hypothetical negotiation taking place at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations.

In determining this, you must assume that both parties believed the patent was valid and infringed, and the patent holder and infringer were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty that either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In determining the reasonable royalty, you should consider all of the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

31

(1)      The royalties received by Bascom for the licensing of **[the Bascom patent / the '606 patent]**, proving or tending to prove an established royalty.

(2)      The rates paid by AOL for the use of other patents comparable to **[the Bascom patent / the '606 patent]**.

(3)      The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted, in terms of territory or with respect to whom the manufactured product may be sold.

(4)      Bascom's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)      The commercial relationship between Bascom and AOL, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)      The effect of selling the patented specialty in promoting sales of other products of AOL, the existing value of the invention of Bascom and the generator of sales of its non-patented items, and the extent of such derivative or convoyed sales.

(7)      The duration of a patent and the term of the license.

(8)      The established profitability of the product made under the patent, its commercial success and its current popularity.

(9)      The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)      The nature of the patented invention, the character of the commercial embodiment of, if owned and produced by Bascom, and the benefits to those who have used the invention.

(11)      The extent to which AOL has made use of the invention and any evidence probative of the value of that use.

(12)      The portion of the profit or of the selling price that may be customary in a particular business or a comparable business to allow for the use of the invention or analogous inventions.

(13)      The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvement added by the infringer.

(14)      Fourteen, the opinion and testimony of qualified experts.

(15)      Fifteen, the amount that a licensor such as Bascom, and a licensee such as

AOL, would have agreed upon at the time the infringement began, if both had been reasonably and voluntarily trying to reach an agreement, that is, the amount which a prudent licensee, who desired as a business proposition to obtain a license to manufacture and sell a particular article embodying the patented invention, would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted in a negotiation between Bascom and AOL taking place at a time prior to when the infringement began.

5.2.    DATE OF COMMENCEMENT OF DAMAGES[17] **[DISPUTED]**

In determining the amount of damages, you must determine the relevant time period for calculating the damages. If you find that Bascom has established infringement, it is entitled to damages arising after April 2008.

Bascom also may be entitled to damages before April 2008. Bascom contends that infringement began in July or August 2003. If you find that Bascom sold products that included the claimed invention between then and April 2008, you must determine whether Bascom has "marked" those products with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. Bascom has the burden of establishing that it substantially complied with the marking requirement. This means that Bascom must show that it marked substantially all of the products it made, offered for sale, or sold under **[the Bascom patent / the '606 patent]** from July or August 2003 through April 2008. Bascom may not recover damages for any period of time where it sold products covered by **[the Bascom patent / the '606 patent]** but did not comply with this marking requirement. Bascom may recover damages for time periods when it either did not sell products covered by **[the Bascom patent / the '606 patent]** or it sold covered products and marked them with **[the Bascom patent / the '606 patent]** number.

---

[17] Bascom objects to this instruction.  There is no evidence from which the jury could conclude that Bascom did not fulfill its marking obligation.  AOL contends that this instruction should be issued because the evidence is such that a jury could conclude that Bascom failed to meet its burden of proof to establish compliance with 35 U.S.C. § 287.

Respectfully submitted,

Dated:  November 1, 2011

/s/ David S. Stone
_____
David S. Stone
Jason C. Spiro
Carolyn Rendell

Of Counsel:

Stone & Magnanini LLP
150 John F. Kennedy Pkwy, 4th Floor
Short Hills, NJ 07078

D. Michael Underhill
Eric J. Maurer
Abby L. Dennis
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
Telephone:  202.237.2727
Fax:  202.237.6131
E-mail:  munderhill@bsfllp.com
E-mail:  emaurer@bsfllp.com
E-mail:  adennis@bsfllp.com

(973) 218-1111 (phone)
(973) 218-1106 (facsimile)
dstone@stonemagnalaw.com
jspiro@stonemagnalaw.com
crendell@stonemagnalaw.com

*Attorneys for Plaintiff Bascom Global Internet Services, Inc.*

/s/John M. Williamson
_____
John M. Williamson
Gerald F. Ivey
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Ave, NW
Washington, DC  20001
Phone: (202) 408-4000
Fax: (202) 408-4400

Michael Cardello III
MORITT, HOCK, HAMROFF &
HOROWITZ LLP
400 Garden City Plaza, Suite 202
Garden City, NY 11530
Phone: (516) 873-2000
Fax: (516) 873-2010

Robert L. Burns
Joseph E. Palys
Elliott C. Cook

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Dr.
Reston, VA 20190
Phone: (571) 203-2700
Fax: (202) 408-4400

*Attorneys for Defendant AOL LLC*