## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BASCOM GLOBAL INTERNET SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:08-cv-1765-LDW-ARL |
| v. | ) ) | |
| AOL INC. | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT AOL INC.'S NOTICE OF MOTION AND MOTION FOR JMOL ON THE INVALIDITY OF U.S. PATENT NO. 5,987,606, OR IN THE ALTERNATIVE, FOR A NEW TRIAL

PLEASE TAKE NOTICE THAT, Defendant AOL Inc. ("AOL") respectfully moves this Court for judgment as a matter of law on invalidity pursuant to Fed. R. Civ. P. 50(b), or in the alternative, for a new trial on invalidity, pursuant to Fed. R. Civ. P. 59. The factual and legal bases supporting this Motion are set forth in the accompanying Memorandum.

Dated:  November 14, 2011

Respectfully submitted,

_____/S/_____
Michael Cardello III (MC-5839)
MORITT HOCK & HAMROFF LLP
400 Garden City Plaza
Garden City, NY 11530
Phone: (516) 873-2000
Fax: (516) 873-2010

Robert L. Burns
Joseph E. Palys
Elliot C. Cook
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Dr.
Reston, VA 20190
Phone: (571) 203-2700
Fax: (202) 408-4400

Gerald F. Ivey
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, DC 20001
Phone: (202) 408-4000
Fax: (202) 408-4400

*Attorneys for Defendant AOL Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

BASCOM GLOBAL INTERNET SERVICES, INC.   )
                                         )
                                         )
               Plaintiff,        )       Case No. 2:08-cv-1765-LDW-ARL
                                         )
v.                                    )
                                         )
AOL INC.                             )
                                         )
              Defendant.       )

**AOL'S MOTION FOR JMOL ON THE INVALIDITY OF**
**U.S. PATENT NO. 5,987,606, OR IN THE ALTERNATIVE, FOR A NEW TRIAL**

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II.  LEGAL STANDARDS ........................................................................................... 3

III.  ARGUMENT ........................................................................................................... 4

    A.  The Court Should Grant JMOL that the Asserted Claims Are Invalid as Obvious.......... 4

        1.  AOL Presented Clear and Convincing Evidence that the Combination of Prior Art Renders Obvious the Asserted Claims of the '606 Patent..................... 5

            a.  The Identified Prior Art Discloses or Suggests Every Limitation of Claim 10 ..................................................................... 5

            b.  The Identified Prior Art Discloses or Suggests Every Limitation of Claim 11 ..................................................................... 7

            c.  The Identified Prior Art Discloses or Suggests Every Limitation of Claim 12 ..................................................................... 8

            d.  The Identified Prior Art Discloses or Suggests Every Limitation of Claim 15 ..................................................................... 9

            e.  The Identified Prior Art Discloses or Suggests Every Limitation of Claim 16 ................................................................... 10

            f.  The Identified Prior Art Discloses or Suggests Every Limitation of Claim 22 ................................................................... 11

            g.  The Identified Prior Art Discloses or Suggests Every Limitation of Claim 23 ................................................................... 13

        2.  AOL Presented Clear and Convincing Evidence that it Would Have Been Obvious to One Skilled in the Art to Combine the Identified Prior Art in Such a Manner that Meets the Limitations of the Asserted Claims .................. 14

    B.  Bascom's Rebuttal to AOL's Invalidity Case Was Based on Conclusory and Misdirected Testimony and Is Contradicted by the Evidence of Record ...................... 16

        1.  The Limitations that Bascom Claimed were Absent from Certain Prior Art Are Nevertheless Found in the Other Prior Art Identified by AOL ............ 17

        2.  Bascom's Effort to Rebut the Motivation to Combine the Identified Prior Art Is Unsupported by the Evidence ................................................... 18

        3.  The Secondary Considerations Presented by Bascom Do Not Overcome AOL's Strong *Prima Facie* Showing of Obviousness ....................... 19

C.      No Reasonable Juror Could Have Found that the Identified Prior Art Does Not Render Obvious and Invalid the Asserted Claims..........................................................22

D.      In the Alternative, the Court Should Order a New Trial on the Invalidity of the '606 Patent Because the Verdict Was Against the Weight of the Evidence and Bascom Improperly Biased the Jury............................................................................23

IV.   CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.,
    555 F.3d 984 (Fed. Cir. 2009) ...................................................................................19

Boston Scientific Scimed, Inc. v. Cordis Corp.,
    554 F.3d 982 (Fed. Cir. 2009) ...............................................................3, 5, 21, 22, 23

Cross v. N.Y.C. Transit Auth.,
    417 F.3d 241 (2d Cir. 2005) .....................................................................................3

DLC Management Corp. v. Town of Hyde Park,
    163 F.3d 124 (2d Cir. 1998) ...............................................................................4, 24

Graham v. John Deere Co.,
    383 U.S. 1 (1966)......................................................................................................5

KSR Int'l Co. v. Teleflex Inc.,
    550 U.S. 398 (2007)...........................................................................................passim

Muniauction Inc. v. Thompson Corp.,
    532 F.3d 1318 (Fed. Cir. 2008) ................................................................................3

Okraynets v. Metropolitan Trans. Auth.,
    555 F. Supp. 2d 420 (S.D.N.Y. 2008) ...................................................................3, 4

Perfect Web Techs., Inc. v. InfoUSA, Inc.,
    587 F.3d 1324 (Fed. Cir. 2009) ..............................................................................19

Phillip Wyers and Wyers Products Group, Inc. v. Master Lock Co.,
    616 F.3d 1231 (Fed. Cir. 2010) ........................................................................passim

Ramos v. County of Suffolk,
    707 F. Supp. 2d 421 (E.D.N.Y. 2010) ..................................................................4, 25

Reeves v. Sanderson Plumbing Prods., Inc.,
    530 U.S. 133 (2000)..................................................................................................3

Song v. Ives Labs., Inc.,
    957 F.2d 1041 (2d Cir. 1992) ...................................................................................4

Sorlucco v. New York City Police Dept.,
    971 F.2d 864 (2d Cir. 1992) ...................................................................................24

Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.,
    308 F.3d 1167 (Fed. Cir. 2002) ................................................................................5

**STATUTES**

35 U.S.C. § 103(a) ........................................................................................................2, 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50............................................................................................................1, 3, 4

Fed. R. Civ. P. 59............................................................................................................1, 4, 23

## I.       INTRODUCTION

Defendant AOL Inc. ("AOL") respectfully moves for judgment as a matter of law ("JMOL") in favor of AOL under Fed. R. Civ. P. 50 or, in the alternative, moves for a new trial under Fed. R. Civ. P. 59, on the issue of whether claims 10-12, 15-16, 22, and 23 of U.S. Patent No. 5,987,606 ("the '606 patent") are obvious and invalid.

The use of lists (e.g., banned lists, allowed lists, etc.) is an old, well-known method of censorship.  There is simply nothing new about the use of lists to block or allow content (in this case, using lists for "filtering" Internet content).  At its core, the invention of '606 patent and the asserted claims[1] cover nothing more than a combination of known filtering mechanisms: filtering at an ISP server based on different combinations of master and personal lists of allowed and blocked sites.  It is undisputed that filtering Internet content based on lists of allowed and blocked sites and the use of personal lists of sites to override master lists of sites was known and used in the prior art well before Bascom's patent.[2]  Nor is there a question that filtering performed at an ISP server was also known and used in the prior art before Bascom's patent.[3]

Given that all of the elements of Bascom's claims are found in the prior art, the question before the jury was whether implementing preexisting customized filtering mechanisms at an ISP

---

[1]  The asserted claims include claims 10-12, 15, 16, 22, and 23.  Claims 10-12 depend from independent claim 1, 6, and 9; claims 15 and 16 depend from independent claim 14; and claim 23 depends from independent claim 22.

[2]  PX 01 at 1:40:50 (explaining that exclusive filtering, inclusive filtering, and word-screening was in the prior art); PX 03 at BASC000029945-46 (describing a preexisting product that included a master block list of and the ability to "create your own list for exclusive ('black list') or inclusive ('white list') filtering of a "range of Internet content.").

[3]  PTX 03 at BASC000029942 (showing an article from the '606 patent file history, which describes prior art PICS filtering "[s]oftware, running either on a user's own PC *or on the computers of the Internet provider* (where it is harder to bypass)"); PX 01 at 2:36-39.

sever was obvious before Bascom's invention.  The evidence and prior art[4] presented at trial clearly and convincingly shows that it was.  The record shows that in 1995-96, AOL offered AOL 2.5 and 3.0, which were ISP-based filtering products that enabled parents to customize their children's access to Internet content based on the lists of allowed and blocked sites.  The record also shows that in 1995, amidst a flurry of government activity to protect children from unseemly content on the Internet, the Platform for Internet Content Selection ("PICS") published documents describing customized filtering based on lists of sites.  At the same time, college student Jason Thomas developed and published articles and software that demonstrated the implementation of customized PICS filtering at an ISP server.  In addition, the record shows that in 1996, the ChoiceNet documents described ISP-based filtering based on customized lists of allowed and blocked sites.

Despite this overwhelming evidence of obviousness, Bascom failed to present sufficient evidence to support the jury's verdict of validity.  The testimony of Bascom's expert that certain prior art references did not disclose certain limitations is misleading given that he never disputed that every limitation of the asserted claims was disclosed by at least one of the prior art references.  Nor did he substantively address the merits of AOL's evidence showing why it would have been obvious to one skilled in the art to combine the prior art in such a way that meets every limitation of the asserted claims.  Likewise, Bascom's evidence of secondary considerations did not establish a nexus between those considerations and Bascom's invention,

---

[4]  The prior art (collectively referred to herein as "the identified prior art") includes:  AOL 2.5, AOL 3.0 (*see* DTX 61, DTX 74, DTX 75 (collectively "AOL 2.5 and 3.0"), the PICS Scenarios document (DTX 88), the PICS Implementation Notes (DTX 540), and the PICS demonstration software (DTX 267) (collectively "the PICS documents"), and the ChoiceNet Technology article (DTX 81) and the ChoiceNet Anti-Surf article (PTX 80) (collectively "the ChoiceNet documents").  Bascom did not dispute that the identified prior art constitutes prior art under 35 U.S.C. §§ 102 or 103.

and thus could not overcome AOL's showing of a *prima facie* case of obviousness. Because Bascom's invention represents no more than the "predictable use of prior art elements according to their established functions," *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007), a reasonable jury must have found that the asserted claims are obvious in view of the prior art asserted by AOL at trial.

## II.   LEGAL STANDARDS

It is well settled that a jury's legal conclusion of obviousness is entitled to no deference, and that judgment as a matter of law on obviousness is fully appropriate. *Muniauction Inc. v. Thompson Corp.*, 532 F.3d 1318, 1324 (Fed. Cir. 2008) (explaining that the Federal Circuit "reviews a jury's conclusions on obviousness, a question of law, without deference, and the underlying findings of fact, whether explicit or implicit within the verdict, for substantial evidence"); *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 554 F.3d 982, 988, 992 (Fed. Cir. 2009); *Phillip Wyers and Wyers Products Group, Inc. v. Master Lock Co.*, 616 F.3d 1231, 1239 (Fed. Cir. 2010).

A court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). The Rule thus "allows the Court to enter a judgment notwithstanding the jury's verdict whenever the law so requires." *Okraynets v. Metropolitan Trans. Auth.*, 555 F. Supp. 2d 420, 444 (S.D.N.Y. 2008) (quoted source omitted). "In reviewing a Rule 50 motion, a court may consider all the record evidence, but in doing so it 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 247 (2d Cir. 2005) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Generally, "'[a] motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'"  *Ramos v. County of Suffolk*, 707 F. Supp. 2d 421, 427 (E.D.N.Y. 2010) (quoting *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998)).  In contrast to a motion under Rule 50, "the Second Circuit has held that the standard for a Rule 59 motion is less onerous for the moving party in two ways: first, '[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict.'  Second, in deciding a Rule 59 motion 'a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'"  *Id.* (quoting *DLC Management*, 163 F.3d at 134).  Accordingly, while a new trial should not be granted unless the jury's verdict is "seriously erroneous," a new trial "may be granted even if there is substantial evidence to support the jury's verdict."  *Okraynets*, 555 F. Supp. 2d at 425 (quoting *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)).

## III.   ARGUMENT

### A.    The Court Should Grant JMOL that the Asserted Claims Are Invalid as Obvious

No substantial evidence supports the jury's verdict that the combination of prior art presented by AOL at trial does not render obvious and invalid the asserted claims of the '606 patent.[5]  The uncontroverted evidence establishes that AOL 2.5 and 3.0, the PICS documentation, and the ChoiceNet documents collectively disclose and suggest ISP-based filtering that enabled a parent to customize access of Internet content for individual user-accounts using personal lists of sites, master lists of sites.  Bascom's evidence of secondary considerations and misdirected testimony that the prior art did not disclose certain features of the

---

[5]  AOL preserves its position that all of the prior art that it offered at trial should have been admitted into evidence.  *See, e.g.*, Trial Tr. at 896:1-899:20, 916:5-917:19.

asserted claims do not overcome the clear and convincing showing of obviousness by AOL.  In the face of such overwhelming evidence, no reasonable jury could have found any of the asserted claims of the '606 patent valid.

      **1.**      **AOL Presented Clear and Convincing Evidence that the Combination of Prior Art Renders Obvious the Asserted Claims of the '606 Patent**

Invalidity is a question of fact, and, as the patent challenger, AOL bore the burden of proof by clear and convincing evidence.  *See Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1188 (Fed. Cir. 2002).  A patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a).  Obviousness is a question of law based on underlying findings of fact.  *KSR*, 550 U.S. at 406.  The factual determinations underpinning the legal conclusion of obviousness include (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) evidence of secondary factors, such as commercial success, long felt need, and failure of others.  *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

At trial, AOL presented clear and convincing evidence that the identified prior art renders obvious the asserted claims of the '606 patent.  That evidence in connection with each of the asserted claims is addressed in turn below.[6]

      **a.**      **The Identified Prior Art Discloses or Suggests Every Limitation of Claim 10**

Claim 10 depends from claims 1, 6, and 9, and thus requires, *inter alia*, a combination of elements including:

---

[6] *See also* Exhibit A.

- a local client computer generating network access requests containing destination addresses,
- logical filtering elements,
- an ISP server executing a filtering scheme using the filtering elements,
- network access requests contain a destination address,
- a master list of excluded sites (e.g., master list of blocked sites), lists of associated allowed sites associated with network access accounts (e.g., personal lists of allowed sites), and a hybrid filtering scheme, and
- access requests to a site be excluded if the requested site is on a master list of excluded sites, *unless* the site is listed on the associated lists of allowed sites.[7]

At trial, AOL presented evidence that the identified prior art discloses or suggests every limitation of claim 10, in accordance with the Court's claim constructions.[8]  For example, AOL presented evidence that the PICS documents and ChoiceNet documents disclose a "local client computer,"[9] and "logical filtering elements" (e.g., lists of sites).[10]  The record also shows that the identified prior art disclose filtering that used logical filtering elements (such as lists of sites) at a "remote ISP server."[11]  AOL also presented evidence that the identified prior art disclose filtering by monitoring the destination address (e.g., URL) of requested sites, such as the URL of Websites or newsgroups.[12]  This identified prior art also discloses a hybrid filtering scheme that included both inclusive and exclusive lists and checked at least one of those lists.[13]

Further, it is undisputed that the ChoiceNet documents disclose ISP server based filtering approaches that could use designated master lists of excluded sites that would deny (i.e., exclude) access to sites enumerated on a master list.  For instance, DTX 81 states that in addition

---

[7]  PTX 01 at 6:62-7:10, 7:27-30, 7:39-51.

[8]  *See* Exhibit A.  The Court construed the following terms found in claims 1, 6, 9:  "local client computer," "remote ISP server," "filtering scheme," "site," "logical filtering elements," "hybrid-exclusive list inclusive list scheme," *see* Trial Tr. at 931:20-932:6, 937:1-24.

[9]  *See* DTX 540, DTX 88, DTX 81.

[10]  *See id.*; DTX 267; Trial Tr. at 828:13-25, 836:6-11, 837:19-839:4.

[11]  *See* Trial Tr. at 661:7-15, 847:8-848:8 and 915:21-23; DTX 74 at AOLBAS_00671503-505, DTX 540 at 4, DTX 88, DTX 81.

[12]  *See, e.g.*, Trial Tr. at 690:14-691:11, 717:22-718:18, 931:2-23, 937:21-22, DTX 61; DTX 74; DTX 267; DTX 88.

[13]  *See, e.g.*, notes 21, 22; Exhibit A.

to allowed lists of sites, "'deny access' can be used, however, if the user prefers."[14]  The

ChoiceNet documents also disclose that parents could choose lists of allowed sites for individual

users.[15]  Further, it is undisputed that the PICS documents disclose parent-designated personal

lists of allowed sites that were associated with individual access accounts that would control

whether access to a site was allowed and that administrators could specify disallowed and

allowed sites.[16]  AOL also introduced evidence that AOL 2.5 and 3.0 provided ISP-based

filtering that blocked access to newsgroup sites[17] included in the list of newsgroups that AOL did

not, by default, initially provide access to via the Add newsgroup feature.[18]  AOL 2.5 and 3.0

allowed access to the originally blocked site if that site was added to the user's customized list of

sites.[19]  In this way, collectively, the identified prior art demonstrates that access requests to

Internet sites listed on a master list of excluded sites (such as those disclosed by ChoiceNet

documents, the PICS documents, or AOL 2.5 and 3.0) would be excluded when the site was not

on a list of allowed sites.  And as explained in Section III.A.2, *infra*, AOL introduced evidence

why it would have been obvious to one of ordinary skill in the art to combine the identified prior

art in a manner that meets the limitations of the asserted claims, including claim 10.  Thus, the

record shows that claim 10 is obvious over the combination of AOL 2.5 and 3.0, the ChoiceNet

documents, and the PICS documents.

> **b.      The Identified Prior Art Discloses or Suggests Every
> Limitation of Claim 11**

---

[14]  *See* DTX 81 at BASC 00002448.

[15]  *See* Trial Tr. at 947:3-948:5; DTX 81 at BASC 00002446-47.

[16]  *See* Trial Tr. at 828:13-25, 836:6-11, 837:19-839:4; DTX 267; DTX 540 at 6.

[17]  *See* Trial Tr. at 931:2-23, 1155:8-13.

[18]  *See* Trial Tr. at 696:25-697:3; DTX 61; DTX 74 at AOLBAS_00671504-05, 614-15.

[19]  *See* Trial Tr. at 689:12-690:15, 943:3-24; DTX 74 at AOLBAS_00671504-05, 614-15.

Claim 11 depends from claim 10 and thus requires, *inter alia*, a combination of elements including:

- associated lists of excluded sites, and
- that the hybrid filtering scheme excludes requests to sites on the master list of excluded sites *or the associated list of excluded sites*, unless the requested site is listed on the list of allowed sites.[20]

As to the first requirement, the record shows uncontroverted evidence that AOL 2.5 and 3.0, the PICS documents, and the ChoiceNet documents provided or disclosed lists of excluded sites that were associated with individual accounts.[21]  Further, the identified prior art discloses that access to the requested site be excluded if the site is listed on the master list of excluded sites *or* the associated lists of excluded sites.[22]  And as explained in Section III.A.2, *infra*, AOL introduced evidence why it would have been obvious to one of ordinary skill in the art to combine the identified prior art in a manner that meets the limitations of the asserted claims, including claim 11.  Thus, the record shows that claim 11 is obvious over the combination of AOL 2.5 and 3.0, the ChoiceNet documents, and the PICS documents.

### c.     The Identified Prior Art Discloses or Suggests Every Limitation of Claim 12

AOL also presented clear and convincing evidence that the identified prior art renders obvious claim 12, which requires a word parsing scheme and lists of excluded words associated with an access account.[23]  For example, the record shows that AOL 2.5 and 3.0 provided word parsing schemes that used lists of excluded words associated with individual screen names.[24]

---

[20]  PX 01 at 7:52-69.

[21]  *See* Trial Tr. at 941:23-942:8; DTX 61, DTX 74 at AOLBAS_00671614-15; DTX 267 (personal lists of blocked sites); DTX 81 at BASC 00002448; Exhibit A.

[22]  *See* Section III.A.1.a, *supra*, and Exhibit A.

[23]  PX 01 at 7:60-67.

[24]  *See* Trial Tr. at 948:14-949:15, 1178:25-1179:5; DTX 61; DTX 74 at AOLBAS_00671614. *See also* Exhibit A.

Further, it is undisputed that the '606 patent acknowledges that word parsing and lists of excluded words were in the prior art.[25]  And as explained in Section III.A.2, *infra*, AOL introduced evidence why it would have been obvious to one of ordinary skill in the art to combine the identified prior art in a manner that meets the limitations of the asserted claims, including claim 12.  Thus, the record shows that claim 12 is obvious over the combination of AOL 2.5 and 3.0, the ChoiceNet documents, and the PICS documents.

> **d.      The Identified Prior Art Discloses or Suggests Every Limitation of Claim 15**

Claim 15 depends from claim 14, and thus requires, *inter alia*, a combination of elements including:

- a local client computer generating network access requests,
- a master site list,
- first personal site lists,
- second personal site lists, and
- a remote ISP server that screens network access request based on the master site list and first and second personal site lists.[26]

At trial, AOL presented clear and convincing evidence that the combination of the identified prior art discloses every limitation of claim 15 in accordance with the Court's claim constructions.[27]  For example, AOL presented evidence that the PICS documents and the ChoiceNet documents disclose a "local client computer" and a "remote ISP server."[28]  AOL also introduced evidence that AOL 2.5 and 3.0 provided ISP-based filtering that provided master lists of sites and personal lists of sites.  For example, the "Use Full Newsgroup List" feature allowed a user to have access to the full range of sites offered by AOL 2.5 and 3.0 beyond the default list

---

[25]  Trial Tr. at 949:16-950:7; PX 01 at 1:41-50 ("Several mechanisms for filtering are available: . . . word-screening or phrase screening which prevents access to web site 'pages' which contain any word or phrase on a predetermined list.").

[26]  PX 01 at 8:4-26.

[27]  *See* Exhibit A.  The Court also construed the term "personal site list."

[28]  *See* Section 3.A.1.a, *supra*.

of allowed sites.  When not selected, AOL 2.5 and 3.0 provided access to a limited set of that full list of sites unless a specific site was added using the Add newsgroup feature.[29]  It is also undisputed that the ChoiceNet documents disclose customized filtering at an ISP server that provided customized lists of sites for individual users and master lists of sites[30] and that the PICS documents disclose first and second personal lists of sites for individual users.[31]  Further, there is sufficient evidence that the identified prior art discloses ISP server based filtering features that would screen access requests to sites based on the lists of sites.[32]  And as explained in Section III.A.2, *infra*, AOL introduced evidence why it would have been obvious to one of ordinary skill in the art to combine the identified prior art in a manner that meets the limitations of the asserted claims, including claim 15.  Thus, the record shows that claim 15 is obvious over the combination of AOL 2.5 and 3.0, the ChoiceNet documents, and the PICS documents.  As such, no reasonable juror could find that the identified prior art does not disclose and render obvious the limitations of claim 15.

> **e.    The Identified Prior Art Discloses or Suggests Every Limitation of Claim 16**

Claim 16 depends from claim 15, and thus adds a combination of elements including:

- access requests with a destination address field, and
- that the ISP server denies the access request if the destination address is listed on the first personal site list, and further denying the request if the destination address is listed on the master list and not on the associated second personal site list.[33]

---

[29]  *See* Trial Tr. at 696:25-697:3; DTX 61; DTX 74 at AOLBAS_00671504-05, 614-15.

[30]  *See* Trial Tr. at 947:3-948:5; DTX 81 at BASC 00002446-47.

[31]  *See* Trial Tr. at 828:13-25, 836:6-11, 837:19-839:4; DTX 267; DTX 540 at 6.

[32]  *See*, *e.g.*, Trial Tr. at Trial Tr. at 689:12-690:15, 828:13-25, 836:6-11, 837:19-839:4; DTX 81, DTX 88, DTX 267, DTX 61, DTX 74.

[33]  PX 01 at 8:27-34.

AOL presented clear and convincing evidence that the identified prior art discloses and renders obvious every limitation of claim 16, in accordance with the Court's claim constructions.[34]  For example, as explained in Section 3.A.1.a, *supra*, the identified prior art discloses access requests that include destination addresses (e.g., URLs) of sites and master lists of excluded sites with personal allow and block lists associated with individual users.[35]  In addition, the record shows that the identified prior art, in combination, discloses or suggest ISP-based filtering mechanisms that would block access to sites that were on a personal block list (such as those disclosed by AOL 2.5 and 3.0 and the PICS documents), and further exclude access to sites when the sites were on a master list of blocked sites (such as disclosed by AOL 2.5 and 3.0, ChoiceNet documents, and the PICS documents), and not on a personal list of allowed sites (such as those disclosed by the PICS documents and AOL 2.5 and 3.0).  And as explained in Section III.A.2, *infra*, AOL introduced evidence why it would have been obvious to one of ordinary skill in the art to combine the identified prior art in a manner that meets the limitations of the asserted claims, including claim 16.  Thus, the record shows that claim 16 is obvious over the combination of AOL 2.5 and 3.0, the ChoiceNet documents, and the PICS documents.  As such, no reasonable juror could find that the identified prior art does not disclose and render obvious the limitations of claim 16.

### f.  The Identified Prior Art Discloses or Suggests Every Limitation of Claim 22

Claim 22 requires, *inter alia*, a combination of elements including:

- an ISP server,
- a remote client computer,
- a master inclusive-list of allowed sites,
- exclusive-lists of excluded sites, and

---

[34]  *See* Exhibit A.
[35]  *See* Section 3.A.1.a., *supra*.

- a "filtering scheme" that allows access to a network access request if the destination address exists on the master inclusive list but not on the associated exclusive list of sites.[36]

AOL presented clear and convincing evidence that the identified prior art discloses and suggests every limitation of claim 22, in accordance with the Court's constructions.[37]  For example, as noted above AOL presented evidence that the identified prior art provided or worked with network access requests including a destination address field (e.g., URL).[38]  AOL also presented uncontroverted evidence that the ChoiceNet documents disclose a master list of allowed sites.  For instance, the documents state that "ChoiceNet is also unique in permitting fully customized access for every user, so that a . . . *Internet Service Provider (ISP) can select* preferred site lists --and can even choose different *allowable lists* for different members of a family." [39]  Further, witness testimony and documentation shows that the PICS documents disclose master lists of allowed sites in the form of the lists of sites maintained and rated by rating services to allow access to groups of users with corresponding settings that match the site's ratings.[40]  The evidence also included descriptions of AOL 2.5, and 3.0's use of a master list of allowed newsgroup sites, such as the default list of sites that were accessible to users.[41]  AOL further presented clear and convincing evidence that the filtering features provided or disclosed by the identified prior art would allow access to sites whose destination addresses were listed on the master allow lists of sites and not on a list of excluded sites.  For instance, AOL 2.5 and 3.0 provided a blocking feature that prevented a user from accessing newsgroup sites that

---

[36]  PX 01 at 8:63-9:11.

[37]  *See* Exhibit A.  The Court also construed the terms "ISP server," and "remote client computer."

[38]  *See* Section III.A. 1.a, *supra*.

[39]  *See* DTX 81 at BASC 00002446-47.

[40]  Trial Tr. at 826:22-827:24, 837:21-838:18, 839:11-841:3; DTX 267, DTX 540.

[41]  Trial Tr. at 950:13-951:10; DTX 74 at AOLBAS_00671504.

were listed in that user's personal list of blocked sites.[42]  The PICS documents also disclose personal block lists and filtering mechanisms that allow access to sites made available through a master lists of sites provided by rating services, and were not specifically blocked by the personal block list for that user.[43]  And as explained in Section III.A.2, *infra*, AOL introduced evidence why it would have been obvious to one of ordinary skill in the art to combine the identified prior art in a manner that meets the limitations of the asserted claims, including claim 22.  Thus, the record shows that claim 22 is obvious over the combination of AOL 2.5 and 3.0, the ChoiceNet documents, and the PICS documents.

> **g.     The Identified Prior Art Discloses or Suggests Every Limitation of Claim 23**

Claim 23 depends from claim 22, and thus adds a combination of elements including:

- associated inclusive lists of allowed sites, and
- that the filtering program allows access requests if the requested destination address exists on an inclusive list of allowed sites.[44]

AOL presented clear and convincing evidence that the identified prior art discloses and renders obvious every limitation of claim 23.[45]  For example, AOL presented uncontroverted evidence that the PICS documents disclosed personal lists of allowed sites that would have been used to enable access to requested sites if the URL of the requested sites were listed on the personal allowed lists of sites for individual users.[46]  The record also includes evidence of AOL 2.5 and 3.0's ability to allow access to requested newsgroup sites that were included on a user's customized lists of newsgroups.[47]  The ChoiceNet documents also disclose an ISP-based filtering

---

[42]  *See* Trial Tr. at 725:12-22; DTX 61; DTX 74 at AOLBAS_00671614-15.
[43]  *See* Trial Tr. at 828:13-25, 836:6-11, 837:19-839:4; DTX 267; DTX 540 at 6.
[44]  PX 01 at 9:12-18.
[45]  *See* Exhibit A.
[46]  *See* Trial Tr. at 828:13-25, 836:6-11, 837:19-839:4; DTX 267; DTX 540 at 6.
[47]  *See* Trial Tr. at 689:12-690:15, 943:3-24; DTX 74 at AOLBAS_0067504-05.

system that enabled parents to select individual lists of allowed sites for individual users.[48]  The disclosures of the identified prior art demonstrate that the filtering system would enable access to sites whose destination addresses were listed on associated lists of allowed sites.[49]  And as explained in Section III.A.2, *infra*, AOL introduced evidence why it would have been obvious to one of ordinary skill in the art to combine the identified prior art in a manner that meets the limitations of the asserted claims, including claim 23.  Thus, the record shows that claim 23 is obvious over the combination of AOL 2.5 and 3.0, the ChoiceNet documents, and the PICS documents.

       **2.**    **AOL Presented Clear and Convincing Evidence that it Would Have Been Obvious to One Skilled in the Art to Combine the Identified Prior Art in Such a Manner that Meets the Limitations of the Asserted Claims**

In addition to showing clear and convincing evidence that the combination of the identified prior art discloses or suggests every limitation of the asserted claims, AOL presented clear and convincing evidence that one of ordinary skill in the art at the time of invention would have found it obvious to combine the teachings of the identified prior art in such a manner that meets the limitations of those claims.

For example, the evidence introduced at trial shows that one of ordinary skill in the art would have had good reason to pursue known options of applying different types of lists of sites (something known and done in the prior art)[50] at an ISP server for filtering content on the Internet (also known and done in the prior art).[51]  Moreover, the evidence shows that there was a need and market pressure to solve the problem of protecting children from inappropriate material

---

[48]  DTX 81 at BASC 00002446-47.
[49]  *See* Section III.A.1.a, *supra*.
[50]  *See, e.g.*, PX 01 at 1:39-52.
[51]  *See id.*, at 2:36-45; DTX 81, DTX 88, DTX 540; DTX 74.

on the Internet.[52]   There were a finite number of identified, predictable solutions to solve the

problem of filtering Internet content.[53]   These solutions included filtering based on lists of

blocked or allowed sites, lists of excluded words, and personal lists of sites that could override

master lists of sites, that could be and was implemented both at an end-user computer and at the

ISP server level.  AOL's expert testified that "[t]o a large degree" the features claimed in the

'606 patent "were already combined . . . [b]ut to the extent that anyone might argue that there

were missing elements from one or another, there were a lot of motivators back at that time."[54]

AOL's expert further explained that "[a]nd with a shelf with all of these prior art references in

front of me, as one skilled in the art at the time, it would have been very obvious to combine the

known elements from those pieces of prior art to create something that matches what's claimed in

the patent."[55]

Thus, the record demonstrates that a person of ordinary skill in the art had good reason to

pursue the known filtering options within their grasp to solve the problems for filtering content

on the Internet.  Indeed, Jason Thomas−a person of ordinary skill in the art at the time of the

invention−testified that he did just that when he developed the PICS demonstration software that

disclosed personal lists of sites that would work in conjunction with master lists of sites,

developed filtering software that performed those functions, and published an article that

---

[52]   Trial Tr. at 652:21-656:15; DTX 540 ("[s]purned by Government regulation of the Internet,
PICS has been pitched as a technical way for parents to prevent their children from viewing
indecent material.")

[53]   *See*, *e.g.*, PX 138 at BASC 0008320-21, 25-30; PX 03 at BASC 000029945-46 (describing
prior art client side filtering product that used master and personal lists of sites); DTX 61, DTX
74, and DTX 75 (describing AOL 2.5 and 3.0's ISP-based filtering system); DTX 88, DTX 267,
and DTX 540 (describing customized filtering that could have been implemented at an ISP-
server); PTX 80 and DTX 81 (describing ChoiceNet's ISP-based customized filtering system).
*See also* Exhibit A.

[54]   Trial Tr. at 957:23-958:13.

[55]   Trial Tr. at 958:14-18.  *See also id.* at 946:6-18.

suggested such filtering could take place at an ISP server.[56]  Others disclosed similar solutions

before Bascom filed its patent application.[57]  Like the inventions claimed in the '606 patent, such

efforts were not the product of innovation, but of ordinary skill and common sense.[58]  *KSR*, 550

U.S. at 421.

Accordingly, AOL presented clear and convincing evidence that one of ordinary skill in

the art would have been motivated by the nature of the problems to be solved, common sense,

and the implicit and explicit motivations provided in the disclosures of the prior art to combine

the teachings of AOL 2.5 and 3.0, the PICS documents, and the ChoiceNet documents in such a

way that meets every limitation of every asserted claim of the '606 patent.

In the face of this clear and convincing evidence of invalidity, Bascom needed to

introduce sufficient contrary evidence to support a verdict of no invalidity.  Bascom did not, and

could not, introduce such evidence because it does not exist.

**B.     Bascom's Rebuttal to AOL's Invalidity Case Was Based on Conclusory and Misdirected Testimony and Is Contradicted by the Evidence of Record**

Bascom did not contest the majority of AOL's expert's invalidity analysis, narrowing the

issues for the jury to a few generic features of the asserted claims.  In particular, Bascom's

expert, Dr. Kursh, limited his rebuttal to the following issues:  (1) AOL 2.5 and 3.0 and the PICS

documents do not disclose master lists of sites (relevant to claims 10, 11, 15, 16, and 22);[59] (2)

---

[56]  *See* Trial Tr. at 818:18-25, 819:19-820:8, 854:2-856:11; DTX 267; DTX 540.

[57]  *See* DTX 61, DTX 74; DTX 88; DTX 81.

[58]  *See* Trial Tr. at 801:20-802:2 (describing what was involved in the Bascom patent as not "rocket science" and "very simple to understand"), 837:19-839:4, 958:23-959:14 (describing why one of ordinary skill in the art would have been motivated to combine the identified prior art in a way that matches what is claimed in the '606 patent).

[59]  Trial Tr. at 1155:5-7, 16, 1178:7-8, 1157:2-13, 1157:25-1158:16; 1163:15-24; 1178:7-8; 1184:14-16.

AOL 2.5 and 3.0 do not disclose personal allow lists of sites (relevant to claims 11, 16, and 23);[60]

(3) the PICS documents do not disclose the word parsing features of claim 12;[61] (4) the PICS

documents do not provide a suggestion to use personal lists of sites on an ISP server (relevant to

claims 10, 11, 15, 16, 22, and 23);[62] and (5) there was no motivation to combine the PICS

documents with the features of AOL 2.5 and 3.0.[63]  But Dr. Kursh's effort to rebut AOL's *prima*

*facie* invalidity case was merely a cursory analysis that ignored the collective disclosures of the

identified prior art, was contradicted by his own testimony, and was conclusory at best.[64]

> **1.     The Limitations that Bascom Claimed were Absent from Certain
>          Prior Art Are Nevertheless Found in the Other Prior Art Identified
>          by AOL**

Even if Dr. Kursh's positions that AOL 2.5 and 3.0 and PICS do not disclose master lists

of sites were considered in a light most favorable to Bascom, there is no evidence from which a

reasonable juror could find that the asserted claims are not obvious under this basis.  For one,

Bascom never introduced evidence disputing ChoiceNet's disclosure of master lists of blocked

and allowed sites used for filtering at an ISP server.[65]  And despite testifying that PICS did not

disclose a master list of sites, Dr. Kursh later acknowledged at trial that the PICS documents

disclosed "different master lists," and described features that enabled children to be assigned

---

[60]  Trial Tr. at 1155:23-1156:16; 1178:7-8.

[61]  Trial Tr. at 1166:5-6.

[62]  Trial Tr. at 1163:5-9.

[63]  Trial Tr. at 1167:21-1168:14.

[64]  Dr. Kursh also attempted to distinguish PICS because of possible rating conflicts.  Trial Tr. at
1161:19-1162:14.  Dr. Kursh's testimony, however, is irrelevant to the limitations of the asserted
claims because even if such a condition did exist, it did not demonstrate that a master list of sites
was not disclosed in the PICS documents.  Moreover, Dr. Kursh did not address the
uncontroverted evidence offered by Mr. Thomas and published in DTX 540 that explained ways
the rating conflicts issued could have been addressed in 1995.  *See* Trial Tr. at 851:1-852:6; DTX
540 at 6.  Bascom's attempt to show the prior art was cumulative is contradicted by the evidence.
*See* DTX 267 and DTX 540 (showing personal lists of sites that are not disclosed in the
Economist article describing PICS (PTX 03 at BASC000029942).)

[65]  DTX 81.

different lists of sites based upon the age configured for each respective child.[66]  Likewise, Dr.

Kursh's testimony that AOL 2.5 and 3.0 did not provide personal allow lists of sites failed to

take into account that the PICS documents disclose personal lists of allowed and blocked sites.[67]

And similarly, Dr. Kursh's testimony that PICS did not disclose the word parsing features of

claim 12 conflicts with the clear and convincing evidence introduced by AOL that AOL 2.5 and

3.0 provided such features at the service provider level.[68]  In fact, Dr. Kursh acknowledged that

AOL 2.5 provided such features.[69]  In short, because Bascom's assault on AOL's invalidity case

did not address the collective teachings and suggestions of the identified prior art, Bascom failed

to present any evidence upon which the jury's verdict of no invalidity can be sustained.

### 2. Bascom's Effort to Rebut the Motivation to Combine the Identified Prior Art Is Unsupported by the Evidence

There is also no evidence of record to support Dr. Kursh's conclusory statement that the

PICS documents do not provide a suggestion to use personal lists of sites on an ISP server.  To

the contrary, AOL introduced clear and convincing evidence that PICS filtering (including

customized allowed and disallowed sites) at an ISP server was known and done before Bascom's

alleged invention.[70]  Moreover, Dr. Kursh's opinion that there was no motivation to combine the

PICS documents with the features of AOL 2.5 failed to take into account the combination of all

of the identified references (including the ChoiceNet documents), the nature of the problem to be

solved, and common sense.

---

[66]  Trial Tr. at 1161:19-20, 1188:21-1189:13.
[67]  DTX 267; DTX 540.
[68]  *See* Trial Tr. at 948:14-949:15, 1178:25-1179:5; DTX 61; DTX 74 at AOLBAS_00671614.
[69]  Trial Tr. at 1178:25-1179:5.
[70]  *See* Trial Tr. at 847:8-848:41, 888:3-889:1, 945:9-11; DTX 88 (scenario 1b); DTX 540; PTX 03 at BASC000029942 ("Software, running either on a user's own PC or *on the computers of the Internet provider* (where it is harder to bypass).").

The record shows that there was a need and market pressure to solve the problem of filtering content on the Internet.[71]  The identified prior art, and the testimony of Eubanks, Thomas, Miller, and Eastburn showed that there were a finite number of identified and predictable solutions, such as the use of personal and master lists of sites.  Against this backdrop, no reasonable jury could find that a person of ordinary skill in the art did not have good reason to pursue the known options within his or her technical grasp.  Indeed, as explained above, Mr. Thomas and others of ordinary skill did pursue such options in the mid 1990s. [72]  And where such efforts lead to "anticipated success, it is likely the product not of innovation but of ordinary skill and *common sense*. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103."  *Perfect Web Techs*., *Inc*. *v*. *InfoUSA*, *Inc*., 587 F.3d 1324, 1328 (Fed. Cir. 2009); *KSR*, 550 U.S. at 420-21 ("Common sense teaches ... that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.").  Here, the use of personal lists of sites with master lists of sites for filtering at an ISP server, among other things claimed in the '606 patent, were nothing more than predictable variations of known filtering mechanisms provided and disclosed by AOL 2.5 and 3.0, the PICS documents, and the ChoiceNet documents.  Such variations are not the result of innovation and thus are obvious.  *See Ball Aerosol & Specialty Container*, *Inc*. *v*. *Limited Brands*, *Inc*. 555 F.3d 984, 992-93 (Fed. Cir. 2009).

      **3.**     **The Secondary Considerations Presented by Bascom Do Not Overcome AOL's Strong *Prima Facie* Showing of Obviousness**

---

[71] *See*, *e.g*., PX 138; Trial Tr. at 652:21-656:18.
[72] *See*, *e.g*., Trial Tr. at 818:18-22, 819:19-820:8; DTX 61, DTX 74, DTX 81, DTX 267, DTX 540.

In an effort to rebut AOL's clear and convincing showing of obviousness, Bascom presented evidence of secondary indicia of nonobviousness including, skepticism in the field, long felt need, and commercial success. Bascom's positions, however, fall short both on the facts and the law.

To begin with, Bascom's expert, Dr. Kursh, alleged there was skepticism in the field and a long felt need to provide the filtering at the server level.[73] But the evidence that Dr. Kursh pointed to in support of his conclusion flatly contradicts his testimony. The Working Group Report to Senator Leahy (PX 138) shows that in 1995, service providers, such as AOL, CompuServe, and Prodigy, were providing filtering at the server level.[74] The ChoiceNet documents further demonstrate that almost one year before Bascom filed its patent application for the '606 patent, customized filtering at an ISP server level was preferred.[75] Also, AOL 2.5 and 3.0 was providing customized filtering at the ISP level,[76] and the PICS documents disclosed that implementation of PICS filtering could be done at an ISP.[77] Moreover, "[f]or objective [evidence of secondary considerations] to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *Wyers*, 616 F.3d at 1246. At trial, Dr. Kursh ignored the Court's construction of the term "site" when he suggested that skepticism relating to filtering "web sites" supports a finding of nonobviousness.[78]

---

[73] Trial Tr. at 1140:17-1141:8, 1148:13-25.

[74] *See* PX 138 at BASC 00008326-27.

[75] *See* DTX 81 at BASC 00002448 ("With ChoiceNet, neither the filtering application nor the authorized (or unauthorized) sites reside on the PC. . . [t]his is infinitely scalable and much easier to manage.")

[76] *See* DTX 74 at AOLBAS_00671503-05.

[77] *See* DTX 88; DTX 540.

[78] Trial Tr. at 1141:19-24 ("But in terms of *Web sites* . . . ."), 1155:8-13 (showing that Dr. Kursh acknowledged that "[a] site can include a newsgroup" in accordance with the Court's construction).

Consequently, there is no substantial evidence upon which a reasonable juror could find nonobviousness on the basis of skepticism in the field or long felt need.

Nor did Dr. Kursh establish a nexus between the evidence of commercial success and the patented invention.  Instead, Dr. Kursh baldly stated that "[c]learly there has been commercial success at AOL with the parental controls with WebUnlock.  It has been successful for them as with the graph that was shown the other day that each -- though AOL's business has dropped, their most loyal customers are the customers with parental controls."[79]  But Dr. Kursh linked the loyalty of AOL's customers and AOL's alleged success to parental controls, which is a service that includes a number of different features above and beyond the accused WebUnlock feature.  Thus, even taking Dr. Kursh's testimony in a light most favorable to Bascom, there is no evidence that can support a finding of nonobviousness on the basis of commercial success because there is no evidence linking any alleged commercial success or customer loyalty to the WebUnlock feature accused of infringement.  *See id.* (rejecting the patentee's reliance on the accused infringer's $20 million in sales of the accused product because the patentee established no direct nexus to the feature affiliated with the claimed invention).

Also, weak secondary considerations of nonobviousness cannot overcome a strong *prima facie* case obviousness.  *See id.*; *Boston Scientific*, 554 F.3d at 991-92.  Indeed, where the inventions represented no more than a "predictable use of prior art elements according to their established functions," secondary considerations may be inadequate to establish nonobviousness as a matter of law.  *Wyers*, 616 F.3d at 1246.  Here, the evidence shows that the asserted claims of the '606 patent were nothing more than a common sense application of known prior art elements (e.g., filtering at an ISP server using lists of different types of allowed and blocked

---

[79]  Trial Tr. at 1149:7-14.

sites).[80]  Thus, Bascom's evidence of secondary considerations cannot support a finding of

nonobviousness in the face of the clear and convincing showing of obviousness by AOL.

>  ### C.   No Reasonable Juror Could Have Found that the Identified Prior Art Does Not Render Obvious and Invalid the Asserted Claims

Where "the content of the prior art, the scope of the patent claim, and the level of

ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent

in light of these factors, summary judgment [or JMOL] is appropriate."  *Boston Scientific*, 554

F.3d at 992; *KSR*, 550 U.S. at 427.  Here, the scope and content of the prior art are not at issue.[81]

Nor is the level of ordinary skill in the art.[82]  Instead, the primary factual inquires that are at issue

include whether there was sufficient motivation to combine the identified prior art and the

pertinence of secondary considerations proffered by Bascom at trial.  Both questions can be

addressed on JMOL.  *See Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237, 1245-46 (Fed. Cir.

2010).  And as noted in Sections III.B.2, B.3, *supra*, both questions favor JMOL for AOL.

The disputed issues in this case mirror those addressed in the *Boston Scientific* and *Wyers*

cases.  In the former case, the Federal Circuit noted that while the content of the prior art was not

in material dispute (despite expert testimony that a particular claim limitation was not taught by

the prior art), JMOL on invalidity was appropriate because (1) the prior art disclosed two

embodiments that together rendered that limitation obvious, and (2) the evidence of secondary

considerations was overcome by the strong prima facie case of obviousness.  *Boston Scientific*,

554 F.3d at 991-92.  In *Wyers*, the Federal Circuit also found asserted claims obvious as a matter

---

[80]  *See* Section III.A, *supra*.

[81]  *See* Section III.B.1, *supra*.

[82]  While AOL and Bascom's experts each offered different levels of ordinary skill in the art, the question was not presented to the jury or was disputed at trial.  *See Boston Scientific*, 554 F.3d at 992 (finding no dispute on the level of ordinary skill in the art despite argument by one party that the other relied on a unduly low level of skill because, *inter alia*, the parties agreed to the level at trial and the question was not even presented to the jury).

of law where the factual issues of obviousness in dispute were narrowed to whether the prior art

are in the same field of endeavor as the patented invention, whether there was sufficient

motivation to combine the references, and the existence and significance of pertinent secondary

considerations. *Wyers*, 616 F.3d at 1237.  Addressing the motivation issue, the Court found

sufficient evidence of a motivation to combine references where all of the limitations of the prior

art references were present in the prior art and the invention addressed a known problem.  *Id*. at

1240-41.  And similar to its decision in *Boston Scientific*, the Court found the evidence of

secondary considerations overshadowed by the strong case of obviousness where the inventions

represented no more than a predictable use of prior art elements.  *Id*. at 1246.

   As in *Boston Scientific* and *Wyers*, the claimed invention of the '606 patent addresses a

known and heavily addressed problem in the mid 1990s:  filtering Internet content to protect

children.  Similar to the prior art addressed in those Federal Circuit cases, the combination of

prior art introduced by AOL discloses every limitation of the asserted claims of the '606 patent

that collectively render the limitations of the asserted claims obvious.

   In light of the clear and convincing evidence of obviousness presented by AOL, and the

lack of substantial evidence by Bascom to rebut that evidence, the Court should grant JMOL that

the identified prior art renders obvious claims 10-12, 15-16, 22, and 23 of the '606 patent.

   **D.    In the Alternative, the Court Should Order a New Trial on the Invalidity of the '606 Patent Because the Verdict Was Against the Weight of the Evidence and Bascom Improperly Biased the Jury**

   If the Court does not grant AOL's motion for judgment of invalidity as a matter of law, a

new trial on invalidity should be granted under Fed. R. Civ. P. 59.  As demonstrated above, the

trial record does not contain sufficient evidence for a reasonable jury to conclude that the '606

patent was nonobvious.  Nevertheless, even if the Court finds that the jury's verdict of no

invalidity is supported by substantial evidence, a new trial is appropriate on this record for two

reasons.  First, because the jury's verdict runs contrary to the strength of the evidence on invalidity, the jury's verdict is seriously erroneous.  Second, Bascom made irrelevant and prejudicial remarks at trial regarding the content of the prior art, despite AOL's repeated objections.

As the Second Circuit recognizes, a new trial may be appropriate "when the jury's verdict is against the weight of the evidence."  *DLC Management*, 163 F.3d at 133.  In this case, the jury's finding that the asserted claims are not invalid cannot be reconciled with the overwhelming evidence of obviousness AOL presented at trial.  As discussed above, Bascom was unsuccessful in discrediting this evidence, either through cross-examination of AOL's witnesses or through its own expert rebuttal testimony.  Given the strength of AOL's evidence of obviousness, the jury's finding of no invalidity was seriously erroneous, and a new trial is appropriate.  *See Sorlucco v. New York City Police Dept.*, 971 F.2d 864, 875 (2d Cir. 1992).

The jury's verdict was also improperly tainted by comments made by Bascom throughout trial to the effect that prior art concerning Internet "newsgroups" was distinguishable from prior art concerning Internet "websites."[83]  As explained above, this purported distinction directly contravenes the Court's construction of the term claim "site" and has no technological merit.[84]  While the Court's construction and the teachings of the prior art make it clear that filtering of

---

[83]  *See*, *e.g.*, Trial Tr. 32:1-9, 108:6-109:2, 774:20-776:18, 778:13-20, 780:15-781:10, 807:10-18, 861:17-19, 994:6-14, 1002:11-1003:8, 1178:16-24, 1218:18-21 (commenting about and questioning whether AOL's prior art technologies provided "web" filtering); 74:5-9 (describing the world wide web as the "wild wild west"); 79:3-8, 92:25-93:23, 131:20-25, 976:10-978:14, 1133:7-23, 1141:19-24 (discussing prior art relating to filtering of "web" sites); 125:5-18, 794:5-795:1, 1003:9-1006:7, 1220:17-22, 1221:24-1222:6 (distinguishing newsgroups from other types of Internet content).

[84]  During trial, the Court agreed that Bascom's attempted arguments concerning the differences between newsgroups and websites were contrary to the Court's claim construction.  *See* Trial Tr. 961:11-965.

newsgroups is equivalent to filtering of websites, Bascom repeatedly insinuated that AOL's prior art parental controls was limited to newsgroup filtering and therefore irrelevant as prior art.[85]

Even if a jury has substantial evidence to reach a conclusion, a new trial is appropriate if the jury was urged to reach that conclusion for "improper reasons." *Ramos*, 707 F. Supp. 2d at 428 (finding that "counsel's improper comments ultimately affected the jury's verdict" and granting a new trial).  In this case, Bascom's comments regarding the differences between newsgroups and websites were not probative of any issue in dispute, since the Court's claim construction already found that both types of sites fall within the meaning of the claim term "site."  Given the irrelevance of these statements, their only effect on the jury would have been to confuse the issues and improperly suggest that the '606 patent is limited to website filtering.  Because Bascom made these statements to the jury on several occasions, over AOL's objection,[86] there is a serious risk that the jury was improperly led to believe that AOL's prior art relating to newsgroups was not competent to render the patent obvious.  This risk is heightened here, because the prior art that used newsgroup filtering is AOL's own prior art, and Bascom's attempts to undermine that prior art may have had the effect of discrediting AOL in the jury's eyes.  Given this serious risk of improper jury bias, together with the lack of record evidence to support the jury's finding of no invalidity, a new trial on invalidity is appropriate.

## IV.    CONCLUSION

For the above reasons, AOL respectfully requests that this Court grant AOL's renewed motion for judgment as a matter of law of invalidity or, in the alternative, grant a new trial on this issue.

---

[85]  *See supra* note 84.
[86]  *See, e.g.*, Trial Tr. 107:6-15; 667:3-9; 797:8-15; 961:11-965.

Dated:  November 14, 2011         Respectfully submitted,


_____/S/_____
Michael Cardello III (MC-5839)
MORITT HOCK & HAMROFF LLP
400 Garden City Plaza
Garden City, NY 11530
Phone: (516) 873-2000
Fax: (516) 873-2010

Robert L. Burns
Joseph E. Palys
Elliot C. Cook
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Dr.
Reston, VA 20190
Phone: (571) 203-2700
Fax: (202) 408-4400

Gerald F. Ivey
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, DC 20001
Phone: (202) 408-4000
Fax: (202) 408-4400

*Attorneys for Defendant AOL Inc*.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on November 14, 2011 on each party identified below in the manner described below:

BY EMAIL

        David Stone (dstone@stonemagnalaw.com)
        Jason Spiro (jspiro@stonemagnalaw.com)
        Eric Maurer (emaurer@bsflip.com)

I declare under penalty of perjury under laws of the State of New York that the foregoing is true and correct.

Dated:  November 14, 2011

                _____/S/_____
                Michael Cardello III (MC-5839)
                MORITT HOCK & HAMROFF LLP
                400 Garden City Plaza
                Garden City, NY 11530
                Phone: (516) 873-2000
                Fax: (516) 873-2010